### GOLDSMITH v. HOLLAND TRUST CO.

(Supreme Court, Appellate Division, First Department. May 1, 1896.)

DAMAGES—BREACH OF CONTRACT TO LOAN MONEY.

　　An action will lie for breach of an agreement to loan money, though the loan was to have been payable on demand, where it was made for a special contingency, which negatived the idea of its immediate return.

Appeal from circuit court, New York county.

Action by Joseph G. Goldsmith against the Holland Trust Company for breach of a contract to loan money. The complaint was dismissed, and plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Emanuel Myers, for appellant.
Gibson Putzel, for respondent.

PATTERSON, J. This is an appeal from a judgment entered in favor of the defendant upon a dismissal of the plaintiff's complaint on a trial of the issues at the circuit. The action was brought to recover damages for the alleged breach of an agreement by the defendant to loan and advance to the plaintiff the sum of $50,000, which loan, it is alleged in the complaint, the defendant contracted to make by advancing the amount referred to on the 1st day of October, 1889, at noon. It is claimed in the complaint that the de-

fendant had full knowledge that the plaintiff desired and applied for the loan for the purpose of using the money to pay part of the purchase price of certain real estate which the plaintiff had contracted to buy from certain persons, and to pay for on the day named. It is also alleged in the complaint that the plaintiff had contracted to sell and convey the same premises to other parties at a large advance, and that he was under contract to deliver the deed to such other parties on the said 1st day of October, 1889, at 2 o'clock in the afternoon, and that, in consequence of the breach of the agreement made with the defendant for the loan and advance of the $50,000, he was unable to complete either of his contracts relating to the real estate, and that he sustained damages to the extent of $800 for commissions due a broker who negotiated his contract with the defendant, and also that he was compelled to lay out divers sums of money, amounting to $600, in matters connected with the transaction of the loan; and he also claims special damages, consisting of the loss of profits on the contract for resale of the premises by him to the third parties referred to. The answer, after denying various paragraphs of the complaint referring to the matters hereinbefore stated, proceeds to set forth, as a separate defense, that on or about the 19th of September, 1889, the plaintiff represented that he had purchased the premises mentioned in the complaint for the sum of $90,000, and that that was the actual value of the property; that the executors of an estate had agreed to lend him $50,000 on a mortgage upon the property, and that he wanted to borrow $50,000 temporarily, to be secured by a bond and mortgage upon the premises; that he was only awaiting the return of the executors referred to, for a permanent loan of the amount stated,—and he applied to the defendant for a loan of $50,000 on his promissory note, payable on demand, at 6 per cent. interest, and with 1 per cent. commission; the note to be secured by his bond, and a first mortgage of $50,000 upon the premises, the title to which was to be good, and in fee simple absolute, and free from all liens and incumbrances except the $50,000 mortgage to be given to the defendant; the title of said premises to be examined and approved by parties to be selected by the defendant, if it decided to make the loan. It was then alleged that the defendant discovered that the statements of the plaintiff were false, and that, thereupon, the defendant declined to make the loan. It appeared by the testimony of the plaintiff at the trial that, in the negotiation of this $50,000 loan, Mr. Van Siclen, an officer of the defendant, acted for it, and that the plaintiff stated to Mr. Van Siclen all the circumstances of his connection with the property, and settled with him the terms upon which the $50,000 was to be advanced, and also informed him of the contract for the resale of the premises, and that, as a consequence of the interview, a paper signed by Mr. Van Siclen on behalf of the defendant was delivered to the plaintiff, in the following words: "Joseph G. Goldsmith, Esq.—Dear Sir: We will lend you the fifty thousand dollars on 90 to 100 Cannon street; note, with B. and M., and title guaranty policy, collateral." The plaintiff further testified that, at the request and upon the insistency of Mr. Van Siclen, he went to

the title guaranty company, and made an agreement with it concerning the searching of the title, and informed Mr. Van Siclen of what he had done; that on the 1st day of October, 1889, he called upon Mr. Van Siclen, at the office of the defendant, when a promissory note was handed to him by Mr. Van Siclen to be signed, Van Siclen saying: "Sign this. It is all right. That is your note for fifty thousand dollars for the loan;" that thereupon he signed a note for $50,000, dated New York, October 1, 1889, payable, on demand, to the Holland Trust Company, or order, with interest at the rate of 6 per cent., with 1 per cent. commission, and which recites that he deposited with the trust company as collateral security for the payment of the note, and also of all other present or future demands of any kind of the defendant against him, "certain property, to be referred to in a memorandum to be kept with the note." He further testifies that at that time, and at the procurement of Van Siclen, he also executed other papers connected with the transaction, and drew a check for $500 for the 1 per cent. commission. He also swore that he paid $200 to the title guaranty company for searching the title, and produced the receipt therefor, and that he also told Van Siclen that he would have to pay $700 commission to the broker who was employed in the sale of the property; that he also was obliged to pay lawyer's fees and disbursements; that he employed the broker, Soloman, to act for him in the transaction with the Holland Trust Company, although it subsequently appeared that he had not paid that broker, but had been sued by him for his commissions. He also testified that on the 1st day of October, after he had executed the $50,000 note, and Van Siclen had received the check for $500, a further demand was made upon him for $800 by Van Siclen, who said, "Goldsmith, you will have to pay eight hundred dollars before we give you the money." This $800 apparently referred to a claim for commissions of a broker named Curtiss. The Holland Trust Company never advanced the $50,000, but the plaintiff, about the middle of October, 1889, took the title to the premises, and procured a loan upon them elsewhere, and he subsequently conveyed the property in exchange for other premises. At the close of the plaintiff's case the learned judge at circuit dismissed the complaint on the ground that no cause of action accrued to the plaintiff, as a borrower, because the contract he had made with the defendant was one to obtain a loan payable on demand; and an exception was duly taken to that ruling.

We are not disposed to question the general proposition that where a contract for a loan of money is made, which may instantly be demanded, a borrower would not be entitled to recover substantial damages for the breach of such a contract; for the very condition of such a loan would seem to imply that the borrower was not to have the use of the money for any fixed purpose, or for any specified time, and the contract would be terminable at once, at the pleasure of the lender. In Bradford, E. & C. R. Co. v. New York, L. E. & W. R. Co., 123 N. Y. 316, 25 N. E. 499, among other things, it is remarked that it must be a rare case, indeed, where it can be said that a person has sustained any damages by the refusal of another

to advance money which he has agreed to advance, and where the person to whom it is to be advanced is under a valid obligation to pay it back immediately. But this cause must be considered and decided upon the special facts which appear in it, and which certainly show that it was within the contemplation of both parties to the agreement that the $50,000 which was to be borrowed by the plaintiff from the Holland Trust Company was to be received and used by the plaintiff for an express purpose, and for a special contingency, and the loan was desired at least for a period of time between the date at which the money was to be paid to the plaintiff, and the time at which he would be able to arrange for a permanent loan of $50,000 on the property he was under agreement to purchase in Cannon street. All this was well understood by Mr. Van Siclen, the officer of the Holland Trust Company. The whole purpose of the loan was that the money might be obtained, and might be used in that transaction; and the feature of giving a demand note must be considered in connection with the only purpose the plaintiff had in borrowing the money, and the only object he had in procuring the loan at all, and in view of which the defendant contracted. This is, therefore, one of the rare cases in which a breach of such a contract may result in damage to the borrower. The entire transaction of the purchase of the property, according to the testimony, depended upon his receipt of the $50,000 on the 1st of October, 1889, and the Holland Trust Company knew it. It was at the instance of the Holland Trust Company that the arrangement was made with the title guaranty company concerning the examination of the title. It required the delivery of the plaintiff's bond, and a mortgage on the real estate, as collateral security for the loan; and thus the very nature of the transaction indicated that, although in form a loan to be returned on demand, yet it was within the terms of the agreement and the contemplation of the parties that it was not a demand to be made the same day that the money was to be advanced, but a demand to be made at such future time as the defendant might select after the plaintiff had had the use of the money for the purpose of paying to his vendor that much of the purchase price of the real estate to be paid for on the 1st of October, 1889. Whether the defendant could have demanded the money the next day, or the next week, it is not material for us to decide. The question is as to the obligation under the special circumstances of this case (which we are alone considering), of the defendant to advance the money on the day fixed for that purpose, so that the plaintiff on that day might have the use of it. The evidence is that the failure of the defendant to advance the money was based upon the exaction of $800 more than the plaintiff had contracted to pay. The damage which the plaintiff has shown to have directly resulted from the breach of the contract is the amount paid to the title guaranty company and to lawyers, and such amount as he may be liable for to Soloman for commissions which Soloman claims to have earned in negotiating the transaction with the Holland Trust Company. Further than this, we do not see, upon this record, any evidence that would authorize an award of damages

for the breach of the contract of resale made by the plaintiff with the third parties referred to. The proof does not show that, in the plaintiff's subsequent dealings with the property, he sustained any real loss on account of the failure of his contract to convey to the third parties on the 1st of October, 1889; and, even if that had been shown, we would not be able to hold that the defendant was responsible therefor. But, as the case was made, we think the complaint should not have been dismissed for the reason assigned by the learned trial judge; and therefore the judgment should be reversed, and a new trial ordered, with costs to abide the event. All concur.